UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHAVIA SAVAGE, *et al*. | Case No. 16-cr-0484(34)<br><br>**FILED UNDER SEAL** |

**CONSENT SEALING MOTION**

In "extreme or exceptional circumstances," the federal courts have authority to seal dismissed criminal charges and thereby effectively expunge them from their publicly available dockets. *United States v. McKnight*, 33 F. Supp. 3d 577, 582-83 (D. Md. 2014) (quoting *Allen v. Webster*, 742 F.2d 153, 155 (4th Cir. 1984)). Such circumstances exist with respect to Chavia Savage—the only defendant in the eighty-defendant Eastern Correctional Institution prosecution to have the charges against her voluntarily dismissed. Although the charges were dismissed, Ms. Savage has continued to suffer collateral consequences because of her indictment and arrest. In order to permit this young woman to continue on her otherwise exemplary path, and to lessen the impact of the charges on her educational and career prospects, the Court should exercise its ancillary jurisdiction and seal these proceedings. The government consents to the relief sought herein.[1]

**BACKGROUND**

Ms. Savage grew up in Salisbury, Maryland, as one of eight children. She was raised exclusively by her mother, Jennell Savage, who often was forced to remain home because of

---

[1] As noted below, Ms. Savage does not seek an order directed at the executive branch with respect to FBI records. Nor does she expect the clerk's office to redact every reference to her name in materials filed on the docket, such as in filings where other parties pasted in the full case caption. Rather, the Court should enter the enclosed proposed order, sealing her name when it appears on the dockets of this case and 16-cr-0485, sealing the filings specific as to sub-docket number 16-cr-0484-34, and redacting her name from a small number of specified filings.

repeated work-related injuries. As a result, the family frequently was homeless, and Ms. Savage often had to support her siblings and her mother.

In 2007, when she was fourteen years old and homeless, Ms. Savage met Travis Gie, the, the sole *Bohl* defendant with whom she had any contact in this case. The two began dating, and Ms. Savage ultimately moved in with the Gie family in order to have a roof over her head until she left for college at Morgan State University in 2014. Ms. Savage broke off her relationship with Mr. Gie, though they remained friends throughout her time at Morgan.

Despite her personal challenges, Ms. Savage excelled in high school, graduating a year early, with honors. After spending two years at community college while simultaneously working several jobs, and taking off a year to earn her cosmetology degree, she transferred to Morgan State University in 2014.

At Morgan State, Ms. Savage was able to pursue her professional dream in the field of social work. She worked as an assistant teacher and site coordinator at the Village Learning Place in Charles Village, where she principally worked with children with behavioral problems, including three young boys whom she mentored. One boy, in particular, started in the program by throwing tantrums constantly, and would routinely storm out of his classes in the middle of the school day. After working with Ms. Savage, he learned to control his emotions, started excelling in school, and joined his school's football team.

Ms. Savage's ability to inspire others, and make them see more in themselves, has pervaded every aspect of Ms. Savage's life. As her mentor in the cosmetology field explained, they met when Ms. Savage was cutting her hair at a Hair Cuttery. "[S]he put me at ease and provided me with more than a hair cut[;] she helped my confidence at the time. I was drawn to her pleasant demeanor, and her ambition to help youngsters through after-school programs." Ex.

1. Ms. Savage also worked as a residential counselor at Arrow Child and Family Ministries, where she was responsible for implementing and overseeing the organization's enrichment program for at-risk youth.

Chavia was arrested in this matter on October 5, 2016. Although she was now confronted with serious charges that threatened to have a major effect on her life, she managed to complete her degree and graduate on time two months later, in December 2016, with a degree in psychology, Dean's List honors, and recognition from the American Psychological Association's International Honor Society (known as Psi Chi).

As noted above, the government alleged that Ms. Savage had contact with a single co-defendant in connection with the alleged conspiracy: her ex-boyfriend, Mr. Gie, who was serving a sentence at the Eastern Correctional Institution in 2015. The allegation was that, during a three-month period in mid-2015, Mr. Gie instructed Ms. Savage to log into an online account on a handful of occasions and electronically deposit funds that Mr. Gie had received, and to send one or more money orders to a post office box in Princess Anne, Maryland. As the evidence developed, Chavia's minimal involvement in the conspiracy, and in particular, her susceptibility to manipulation by her long-time boyfriend, became clear, and the government agreed to a deferred prosecution agreement, which was filed on February 2, 2018. ECF No. 1076. After the year-long deferral period, the government moved to dismiss, ECF No. 1409, and on February 8, 2019, the Court dismissed with prejudice all charges against Ms. Savage. ECF No. 1411.

Unfortunately, Ms. Savage has continued to suffer the collateral consequences of this prosecution. She was terminated from her position with Arrow Child and Family Ministries, and was almost evicted from her apartment. The devastation of losing the job in Arrow's at-risk youth enrichment program was beyond financial; she loves working with children, especially

troubled youngsters, such as those she worked with through Village Learning Place and Arrow Ministries, and helping them realize their full potential.

Despite the stigma of her arrest and the pending charges, Ms. Savage managed to finish her degree, and graduated from Morgan State in December 2016. She knew that the only way she would be able to afford to go back to school would be if she could secure a work study position, and so in anticipation of applying to graduate school, she applied for an administrative position at Morgan State as an office assistant in Morgan State's Federal Work Study Program. But she was rejected from even the office assistant position to which she applied. She suspected the rejection was due to the pending charges, and so she reached out to the program. Indeed, although the department had "recommended her for hire," she had "failed" the program's threshold background check due to the then-pending charges in this Court. Ex. 2. She was sent a copy of the internal records showing her "Current Status" as "BC [background check] failed – applicant disqualified." *Id*.

Learning that the federal charges were preventing her from even *working* at Morgan State—let alone enrolling in one of its graduate schools—was extraordinarily discouraging. But Ms. Savage's resourcefulness and perseverance is inspiring. In June 2019, she was hired at Thread, the innovative community development organization in Baltimore, where Ms. Savage used her dedication, and her ability to connect with and inspire young people, to engage with disconnected and disaffected youth. She became a Coordinator on Thread's Investment Team and was responsible for reconnecting with young people, ages 14-24, with whom the organization was having a hard time staying in touch. As her supervisor at Thread, Delshan Baker, put it:

> I've spent the last twenty years in the human services field, working directly with hundreds of people who show up every day to try to make life better for someone else, and still, coming across someone as personally vested as Chavia is rare. . . .
>
> She would go to homes, schools, neighborhoods, malls, median strips—wherever a young person might be or was last seen. It seemed not only her job but her calling to re-establish genuine and caring connections with those who had pushed away, but still needed support. She ensured that youth struggling with housing, food or clothing insecurity were connected to those resources.
>
> She has been instrumental in re-enrolling disengaged youth in high school, GED programs, and post-secondary training. Because of her ability to build relationships, intention and drive, there were times when Chavia and Chavia alone was able to make a connection when other staff could not. She is single-handedly responsible for reconnecting with some youth where I had watched others for two-years attempt and fail. She also became connected with parents and loved ones; they relied on her as an integral part of the community who was paying attention to and working in favor of their children.

Ex. 3.

In May 2020, however, Ms. Savage decided to move to another state to try to lessen the impact of the criminal charges. The twenty-eight months between indictment and dismissal were the darkest of Ms. Savage's life, and she dreads the notion that with any school or job application, she would have to relive a piece of those dark days. Having to disclose the charges, or having a potential graduate school or employer learn of the charges, has deterred her from applying to graduate school or many jobs. She understands that the FBI records of the charges are indelible and un-sealable. But sealing of this Court's records of the charges would have a significant impact to allow her to resume her path to advanced employment, to resume working with troubled youth, and to pursue graduate school.[2]

---

[2] The FBI's National Crime Information Center (NCIC) database is only accessible by "Federal, state, and local law enforcement and other criminal justice agencies." *See* National Crime Information Center (NCIC), https://fas.org/irp/agency/doj/fbi/is/ncic.htm.

**ARGUMENT**

I.  **The Federal Courts Have Authority to Expunge Dismissed Criminal Charges In Exceptional Circumstances.**

In criminal cases, federal courts not only have jurisdiction expressly conferred on them by Congress, *see e.g.,* 18 U.S.C. § 3231 (conferring jurisdiction "of all offenses against the laws of the United States"), but also "ancillary" jurisdiction "over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). Ancillary jurisdiction provides, among other things, such authority as is necessary "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379-80. Put differently, ancillary jurisdiction authorizes the federal district courts to exercise jurisdiction over any "collateral proceedings" when doing so is "necessary to allow [the court] to vindicate its role as a tribunal." Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3523.2 at 213 (3d ed. 2008). "Without the power to deal with issues ancillary or incidental to the main action, courts would be unable to effectively dispose of the principal case nor do complete justice in the premises." *Garcia v. Teitler*, 443 F.3d 202, 208 (2d Cir. 2006).[3]

Ancillary jurisdiction includes authority to seal records of dismissed criminal charges. "[E]xpungement of an arrest record is . . . akin to, for example, modification or revocation of supervised release." *McKnight*, 33 F. Supp. 3d at 582 (citing *United States v. Steelwright*, 179 F. Supp. 2d 567, 571 (D. Md. 2002)). "The authority to order expungement" (or sealing of

---

[3] Although some aspects of common law ancillary jurisdiction were codified by 28 U.S.C. § 1367, that statute "does not affect common law ancillary jurisdiction 'over related proceedings that are technically separate from the initial case that invoked federal subject matter jurisdiction,' which remains governed by case law." *United States v. McKnight*, 33 F. Supp. 3d 577, 580 (D. Md. 2014) (quoting *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 363 (4th Cir. 2010), which in turn quoted 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper and Richard D. Freer, *Federal Practice and Procedure* § 3523.2 at 213 (3d ed. 2008)).

dismissed charges) in cases that did not result in conviction "is a logical and not unlawful extension of the court's authority to manage its proceedings, vindicate its authority, and (in particular) effectuate its decrees." *Id.* The Fourth Circuit has acknowledged that the district courts have "equitable discretion" to expunge federal records after an acquittal. *Allen v. Webster*, 742 F.2d 153, 155 (4th Cir. 1984) (acknowledging such authority but holding that, in the "circumstances" of that case, "the district court did not abuse its equitable discretion in denying the requested relief of expungement"). The factors supporting expungement are at their apex where criminal charges have been dismissed. *See United States v. Trzaska*, 781 F. App'x 697, 703 (10th Cir. 2019) (vacating denial of expungement motion where charges were dismissed, and distinguishing the case from "motions to expunge records of a criminal conviction," which motions "have been held to a higher standard than those seeking expungement of records relating to acquittals or dismissals of charges").[4]

The remedy of equitable expungement is reserved for "extreme circumstances." *Schnitzer*, 567 F.2d at 539. It is "to be granted in the balancing of the interests of the Defendant[] and the [government]." *Woodall v. Pettibone*, 465 F.2d 49, 52 (4th Cir. 1972). "If the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction [a synonym for expungement] is appropriate." *Steelwright*, 179 F. Supp. 2d at 574 (quoting *Diamond v. United States*, 649 F.2d 496, 498 (7th Cir. 1981)). Where warranted, expungement aims to "remov[e] the stigma and disabilities that come with having a criminal history." Mackenzie J. Yee, Note, *Expungement Law: An Extraordinary Remedy for an Extraordinary Harm*, 25 Geo. J. On Poverty L. & Pol'y 169, 178 (2017). *See*

---

[4] Some other circuits construe ancillary expungement jurisdiction more narrowly. *See, e.g.*, *United States v. Field*, 756 F.3d 911, 915 (6th Cir. 2014) (limiting expungement jurisdiction to "challenge[s] [to] an unconstitutional conviction or an illegal arrest"); *United States v. Wahi*, 850 F.3d 296, 303 (7th Cir. 2017) (holding that ancillary jurisdiction does not cover expungement).

*also* Deborah Sprenger, Annotation, *Expunction of Federal Arrest Records in Absence of Conviction*, 97 A.L.R. FED. 652, § 2 (1990) (noting that "dissemination of the arrest record can inflict definite and demonstrable harm on the arrested individual").

As with other equitable remedies, courts "must 'mold each decree to the necessities of the particular case, stressing 'flexibility rather than rigidity,' while retaining '[t]he qualities of mercy and practicality [that] have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs.'" *McKnight*, 33 F. Supp. 3d at 583-84 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). Such "exceptional circumstances" take various forms. One type of "extreme or exceptional circumstances" meriting expungement is "where a Defendant has, for example, been denied a security clearance, specific job opportunities, or has otherwise been materially harmed by the presence of criminal records." *Id.* at 584. In such circumstances, the district courts have authority to seal judicial records of dismissed charges.[5]

## II.     This Is An Extraordinary Case Where Justice Requires Expungement.

The instant case is one of those "exceptional circumstances," *Schnitzer*, 567 F.2d at 539, meriting an order to seal the court records of this dismissed prosecution. As explained above, Ms. Savage has been "materially harmed by the presence of criminal records," *McKnight*, 33 F. Supp. 3d at 584, and "the dangers of unwarranted adverse consequences to [her] outweigh the public interest in maintenance of the records," *Steelwright*, 179 F. Supp. 2d at 574. Ms. Savage has attempted to move on with her life, but the charges themselves, and the toll of fighting them, have wrought severe damage on the course of this promising young woman's life.

---

[5] The Court need not decide whether its ancillary expungement jurisdiction includes authority to issue orders directed at the executive branch, such as expungement of the charges from the FBI's NCIC database. Ms. Savage does not seek such an order. Rather, the Court should exercise its ancillary jurisdiction to seal its own records, as set forth in the enclosed proposed order.

When she was charged, she was at the pinnacle of promise. She had found her calling in psychology and social work, was making and saving money through the Morgan State work study program, was about to graduate with honors, and was planning to apply to graduate school. Then came the ECI charges. The government eventually agreed to dismiss the charges, but as discussed above, the toll has been immense. She took the first steps toward graduate school, but was immediately turned away because of the charges in this Court. Fear of having to disclose the charges, and revisit the most horrifying chapter of her life, have further deterred her from seeking other opportunities.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Ms. Savage's expungement motion, and seal the instant motion, as well as seal or redact this Court's records reflecting the charges against her, as specified in the attached proposed sealing order and the enclosed Exhibits 4 through 8.

Date:   December 23, 2020

Respectfully submitted,

*/s/ Adam B. Abelson*
Gregg L. Bernstein (Bar No. 01340)
Adam B. Abelson (Bar No. 29532)
ZUCKERMAN SPAEDER, LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202–1031
(410) 332–0444; (410) 659–0436 (fax)
gbernstein@zuckerman.com
aabelson@zuckerman.com

C*ounsel for Defendant Chavia Savage*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of December, 2020, a copy of this Consent Sealing Motion and proposed sealing order (filed under seal) were served by e-mail and first class mail on:

>Leo J. Wise, Assistant U.S. Attorney
>Office of the U.S. Attorney
>36 South Charles Street – 4th Floor
>Baltimore, MD 21201
>lwise@usa.doj.gov

>*/s/ Adam B. Abelson*_____
>Adam B. Abelson